The opinion of the Court was delivered by
Pociié, J.
Plaintiff’s object is to recover damages exceeding $12,000, alleged to have been caused him by the defendant corporation, in consequence of an unlawful obstruction on the Boeuf river, a navigable stream, on which plaintiff was running a steamboat.
The answer is a general denial, coupled with the special averment that defendant, incorporated under the laws of this State, had .the right of building, repairing and rebuilding necessary bridges overall streams along its line.
The case was tried by a jury, who found a verdict of one thousand dollars in favor of plaintiff, and both parties have appealed.
Our attention is called to numerous bills of exceptions taken by counsel on both sides, many of which can hardly be considered as serious, and are overruled in globo.
The objection to the introduction of J. W. Green’s testimony, on the ground that the certificate of the Governor of Georgia to the magistrate’s signature and capacity, had not been signed by him, but by his private secretary, was not well taken. The original document, which is annexed to the transcript, purports to have been signed by the Governor, under the seal of the State, and is conclusive as to its veracity and authenticity.
*972 The objection to the right of Green and Preston, shown to be experienced railroad men, to express opinions as to the time necessary to the building of a bridge, and other matters connected therewith, was prop- • erly overruled, the witnesses, being experts, were competent to give tlieir opinions on the subject matter of their examination.
Some irrelevant evidence was admitted, but it will not be considered by us.
As the whole case is to be reviewed, both on the law and on the facts, we deem it unnecessary to express a formal opinion on the exception urged by defendant to the Judge’s charge to the jury, as it will be virtually disposed of in our statement of the law governing the case.
The testimony is somewhat conflicting, but after a careful examination Of the record, we find the following facts to be fully established under the evidence.
A drawbridge of the Company, crossing Bosuf river, a navigable stream, having been, on inspection, found decayed, rotten and unsafe for the use of a railroad, the Company determined to rebuild the bridge in the summer of 1880.
The superintendent of the road then entered into a contract with an experienced bridge builder, who undertook to build the bridge during the summer months, when Boouf river was usually too low for purposes of navigation.
Owing to an overflow of the surrounding country, caused by inundations from the Mississippi river, lasting until the end of April, the work could not be begun before July, after the complete subsidence of the high water.
In order to accelerate the structure, and to avoid any obstruction to navigation, the Company stipulated with the contractor for the preparation of the necessary materials at their workshops in Monroe, 'and for their transportation to the spot as soon as the stage of the water would permit the structure of the bridge.
In order not to suspend travel and through trains, and acting on long experience which' taught the fact that the navigable season on that river usually began at the end of December of each year, and ended in July following, and that the construction of a temporary stationary bridge immediately adjoining the bridge under progress of construction, would not interfere with navigation, the. Company built such a temiiorary structure, on which they ran their trains. But, beginning in August, and ending only in December following, a very rainy season set in, and swelled the waters of the liver to almost an unprecedented height for the summer season, and materially impeded the progress of the work, which was, in consequence thereof, not completed till late in December, when, under ordinary circumstances, it *973 should and would have been terminated in September or early in October, long before the resumption of navigation on the river as a channel of commerce.
By reason of the incessant rains which impeded the work, an unusually early stage of navigable water on the river, was'obtained in November, when plaintiff undertook to run his boat, in liis accustomed trade, which was mainly above the. bridge, and the passage was obstructed by the temporary stationary bridge of the defendant, and •this obstruction lasted during a time iff which he could have made four trips between New Orleans and the head of navigation on Bceuf river.
Under this state of things, the Company did everything in its power to accelerate the construction of its bridge, and to remove the obstructions to navigation, by adding to the constructor’s force a gang of its own bridge laborers, by working on Sunday, and by trying oven to do night work.
Now, we hold that under its charter, by which it was empowered and authorized to construct, make- and maintain a railroad from a point on the Mississipi>i river opposite Vicksburg, thence west to the line of the State of Texas, via Monroe and Shreveport, the Company had the undoubted right to build all the necessary bridges across any navigable stream in the course of its line, and that the legislature had the power to confer such right.
“ The grant of power to construct a railway between two points, carries authority to cross navigable waters, if that is reasonably necessary in the construction of the works.” Redñeld, p. 322, Note; 5 Allen, 221. ' ' .
It is also unquestioned, that “ the State legislatures have unlimited power to erect bridges and railways, and make any other public works across navigable waters, subject only to the paramount authority of the national government.” Redfield, 323; People vs. Renssalaer & Saratoga R. R. Co., 15 Wendell, N. Y., 113; Gilman vs. Philadelphia, 3 Wall. 713; The Wheeling Bridge case, 18 Howard, 432 ; The Blackbird Creek Marsh Company’s case, 2 Peters, 245; Worth vs. Junction R. R. Co., 5 McLean, 425.
These principles, resting on foundations of reason, as well as of law and authority, giving the right to build necessary bridges, necessarily imply not only the right, but the duty of the Company to keep and maintain them in such repair as the public safety may require, Hence, the legal right of the defendant Company, to rebuild the bridge in question, which had been pronounced unsafe by competent authority.
We shall now consider whether, under the circumstances disclosed by the record, the Company can be held .responsible for the damages *974 occasioned by it to the plaintiff, through the delay which it met in the construction of that bridge, which delay became unavoidable, under the unexpected, unforeseen and unprecedented rains which prevailed during the months of August, September, October, November and December of that year.
This proposition involves the consideration of the question of a party’s responsibility in damages for injury done to another, in the pursuit of a legal right, or in the performance pf a lawful act. And both on reason and authority the inquiry must be answered in the negative.
The Company had the right to build the temporary bridge, in order to facilitate the structure of the new bridge, and for the purpose of continuing its through trains. If the bridge had been completed, and the obstruction to navigation removed before the resumption of trade on the river, as had been contemplated, and as it was reasonably expected, no one could have complained, as no one could have been injured or damaged. The delay was caused by accidents and circumstances over which the Company had no possible control, and for which it cannot be held responsible in justice or in law.
In the case of the Memphis & Ohio R. R. Co. vs. Hicks, 5 Sneed Tennessee, p. 427, it was held, “that the provision in the charter of a railway company, authorizing it to bridge a navigable stream, provided that the navigation of the stream shall not be obstructed, is not violated by a temporary obstruction of the stream by scaffolding, etc., in the construction of the bridge.”
The present case presents circumstances clearly entitling the defendant to the protection of the rule of “ damnum absque injuria,” and we are, therefore, compelled to exonerate it from any responsibility for the dam ages resulting from the temporary obstruction to the navigation' of Boeuf river, in its attempt to rebuild a necessary bridge. Ransom vs. Labranche, 16 An. 121; 11 An. 711; 15 An. 559; 27 An. 442; Week’s Absque Injuria, Pars. 48, 49.
This conclusion eliminates from discussion the question of the damages, which plaintiff majr or not have suffered from the obstruction of the river, which is thus shown not to have been unlawful.
It is, therefore, ordered, adjudged and decreed, that the verdict of the jury be set aside, and the judgment of the lower court annulled, avoided and reversed; and it is now ordered, that plaintiff’s demand be rejected, and his action dismissed at his costs in both Courts.